**C.N. BROWN CO.**

v.

**Katie J. GILLEN d/b/a Gillen's Store and Gillen's Maine Grocer, Inc.**

Supreme Judicial Court of Maine.

Argued Nov. 16, 1989.
Decided Feb. 6, 1990.

Stephen E. Langsdorf (orally), Bruce C. Gerrity, Preti, Flaherty, Beliveau & Pachios, Augusta, for plaintiff.

Bernard J. Kubetz (orally), Eaton, Peabody, Bradford & Veague, Bangor, for defendants.

Before McKUSICK, C.J., and ROBERTS, WATHEN, GLASSMAN, CLIFFORD and HORNBY, JJ.

GLASSMAN, Justice.

C.N. Brown Co (Brown), a petroleum products franchisor and distributor, sued its franchisee, Katie Gillen and the convenience stores owned by her known as Gillen's Maine Grocer, Inc.[1] to recover monies allegedly owed to Brown for petroleum products and convenience store merchandise purchased by Gillen and for payments due on two promissory notes. Gillen counterclaimed, alleging a series of tort and breach of contract claims arising from various aspects of the relationship of the parties. Judgments on directed verdicts were entered for Brown in the respective amounts of $3,829.62 and $1,995.30 in the Superior Court (Waldo County, *Silsby, J.*). Judgments were entered on the jury verdicts in the amount of $14,523.67 for Brown and in the amount of $58,200 for Gillen. Gillen appeals and Brown cross-appeals. We vacate a number of the judgments entered in this case and direct the entry of judgment for Gillen in the amount of $62,851.39.

Gillen operated a store in Winterport and one in Bangor. Brown, a Maine corporation, sold and distributed petroleum products and convenience store merchandise. Brown supplied these products to Gillen from December 1983 to January 1985. Prior to December 1983, Gillen purchased petroleum products from Getty Oil Company. In December 1983, Getty assigned its contract with Gillen to Brown. In April 1984, Brown stopped supplying Gillen under the Getty contract and executed its own contract with Gillen. The business relationship between the parties terminated in January 1985. By its complaint of March 1986, as amended, Brown sought the recovery from Gillen of $48,285.43 allegedly owed to it by Gillen on promissory notes and for goods and services furnished to Gillen. Gillen filed a counterclaim in nineteen counts seeking general and punitive damages from Brown.

A jury trial was held from November 3, 1988 to November 14, 1988. At the close of all the evidence, the trial court granted Brown's motion for a directed verdict and judgments were entered for Brown for $3,829.62 on its claim for the promissory note for the replacement of underground tanks (Count IV of Brown's amended complaint) and for $1,995.32 on its claim for amounts owed on the promissory note for petroleum products (Count I of Brown's complaint). The court directed a verdict against Gillen on Gillen's claim for punitive damages (Count XVIII) and on Gillen's claim for the negligent manner in which the replacement tanks were installed (Count XIX). The trial court granted Brown's motion to dismiss Gillen's claim under the Petroleum Marketing Practices Act (Count VI) for lack of subject matter jurisdiction and Gillen's claim arising under the Maine Motor Fuel Distribution and Sales Act (Count I) on the ground that the sections of the Maine Act under which Gil-

---

1. For convenience of identification, both defendants are hereinafter referred to as "Gillen."

len sought relief are preempted by the PMPA.

The jury awarded Brown $14,522.67 on its complaint and Gillen $157,200, and judgments were entered accordingly. The verdict for Gillen was allocated as follows:

| | |
|---|---|
| Bangor Fuel Oil Business (Counts II–IV) | $21,000 |
| Failure to Make Timely Deliveries (Counts VII, IX–X) | $50,000 |
| Petroleum Products Pricing Agreement (Count XII) | $11,200 |
| Removing Underground Tanks (Count XV) | $25,000 |
| Interference with Business Relations (Count XVII) | $50,000 |

On February 2, 1989, after a hearing, the trial court denied Brown's motion for a new trial but granted its motion for a judgment notwithstanding the verdict on Count XV of Gillen's counterclaim (negligent removal of the underground tanks) and on Count XVII (intentional interference with business relations) and for a remittitur by Gillen from $50,000 to $26,000 in damages on Count IX (Brown's failure to make timely deliveries of petroleum products). Accordingly, the judgment for Gillen was reduced from $157,200 to $58,200.

### *Gillen's Appeal*

■ 1. Gillen first contends[2] that the trial court erred in granting a remittitur to Brown on Gillen's claim that Brown failed to make timely deliveries of petroleum products to the Winterport store. We disagree. The assessment of damages is the sole province of the jury, and the amount fixed must not be disturbed by the trial court unless it is apparent that the jury acted under some bias, prejudice or improper influence, or made some mistake of law or fact. *Poulette v. Herbert C. Haynes,*

**2.** Gillen did not provide this court with a transcript of the hearing on Brown's post-trial motion. As the appellant, "who [has] the responsibility for bringing up on ... appeal 'a transcript of such parts of the proceedings ... [as deemed] necessary,' M.R.Civ.P. 74(b)(1), [Gillen is] bound by the limitations of the appellate record now before us." *Tanguay v. Seacoast Tractor Sales, Inc.,* 494 A.2d 1364, 1368 (Me.1985).

**3.** M.R.Civ.P. 59(a) provides, in part:
 **(a) Grounds.** The justice or judge before whom an action has been tried may on mo-

*Inc.,* 347 A.2d 596, 599 (Me.1975). Our review of a trial court's disposition of a motion for a new trial is very limited when the motion is based on excessiveness or inadequacy of damages awarded by a jury.[3] "In deciding the correctness of the action taken by the presiding Justice we cannot substitute our judgment for his. His order may be reversed by us only 'in the event that a clear and manifest abuse of discretion on the part of the trial judge is shown.'" *Chenell v. Westbrook College,* 324 A.2d 735, 737 (Me.1974) (quoting *MacLean v. Jack,* 160 Me. 93, 99, 198 A.2d 1, 4 (1964)).

■ The reasonableness of a remittitur in the case of a claim of excessive damages "may be better resolved by the justice who presided at the trial than by an appellate court restricted to the ofttime lifeless pages of a record." *Mandarelli v. McGovern,* 393 A.2d 533, 536 (Me.1978). *See also Nyzio v. Vaillancourt,* 382 A.2d 856, 862 (Me.1978) (great weight afforded to trial court's belief with respect to jury's perception of case, as evidenced by trial court's use of remittitur).

The record here reveals that Gillen could have lost no more than $48,000 during the claimed period and that a substantial part of that loss was attributable to causes other than the untimely delivery of petroleum products by Brown. Because Gillen offered evidence of damages that clearly were not relevant to this claim, the trial court could reasonably determine that the jury mistakenly used an improper measure for damages. Accordingly, on this record we cannot say that Gillen has shown a clear and manifest abuse of the trial court's discretion by the court resorting to a remittitur on this issue.

 tion grant a new trial to all or any of the parties and on all or part of the issues for any of the reasons for which new trials have heretofore been granted in actions at law or in suits in equity in the courts of this state. A new trial shall not be granted solely on the ground that the damages are excessive until the prevailing party has first been given an opportunity to remit such portion thereof as the court judges to be excessive.

■ 2. Gillen next contends that the court erred in granting Brown's motion for a judgment notwithstanding the verdict awarding Gillen $25,000 on Count XV of Gillen's counterclaim for Brown's alleged negligence in the removal of the underground tanks. We agree. We will uphold the entry of a judgment notwithstanding the verdict only if the jury verdict favoring Gillen could not have been sustained upon any reasonable interpretation of the evidence, including every justifiable inference, viewed in the light most favorable to Gillen. *McCain Foods, Inc. v. St. Pierre*, 463 A.2d 785, 787 (Me.1983). "If, on the basis of credible evidence in the record, reasonable minds could reach different conclusions in regard to a dispositive factual question, the court may not set aside the conclusion reflected in the jury's verdict." *Id.* at 788.

■ The record in this case reflects that the following evidence, if believed, would support the verdict of the jury: Brown owned two underground petroleum product storage tanks located at Gillen's Winterport store; Gillen advised Brown one of the tanks was leaking; Brown took an unreasonable time to have the tanks replaced after being notified of the leaks by Gillen, thus increasing the danger of ground contamination; Brown hired Simard to remove the tanks but did not inform Simard of the leak; Simard did not test for leaking gasoline; during the removal of the tank Simard pumped a large quantity of contaminated liquid which was spread on Gillen's property and contaminated the soil on Gillen's property; the proper procedure would have been to test the liquid and soil surrounding the leaking tank for contamination and to place all contaminated materials in containers for proper disposal; soon after the tanks were replaced Gillen discovered contaminated water leaking into the basement of the store; the contaminated soil at the Winterport property had rendered the property unmarketable without the expenditure of the cost of removing the contaminated soil and replacing it with clean soil. The jury also heard evidence as to the present loss of value of the property and the estimated cost of a cleanup of the property.

We find no merit in Brown's contention that because of Simard's testimony that had he been advised of the leak in the tank he would not have performed the removal differently, the jury could not find Brown negligent. *See Auto Sales & Finance Company v. Seavey*, 401 A.2d 648, 650 (Me.1979) (trier of fact may disbelieve testimony of a witness). Accordingly, we hold that the trial court erred in granting Brown's motion for a judgment notwithstanding the verdict as to Count XV of Gillen's counterclaim and reinstate the jury verdict awarding Gillen $25,000 in damages on this Count.

■ 3. Gillen next contends that the trial court erred in granting Brown's motion for a judgment notwithstanding the verdict on Count XVII of Gillen's counterclaim alleging that Brown had intentionally interfered with Gillen's business relations with others. We disagree. For the trial court properly to have sustained a verdict for intentional, tortious interference with business relations, Gillen must have presented sufficient evidence to show that Brown, by fraud or intimidation, procured the breach of an existing contract that would have continued but for such wrongful interference. *See Pombriant v. Blue Cross/Blue Shield of Maine*, 562 A.2d 656, 659 (Me. 1989); *MacKerron v. Madura*, 445 A.2d 680, 683 (Me.1982).

Here, the record reflects that the only evidence presented to the jury on this count was Gillen's testimony that after the termination of the parties' relationship Harold Jones, the president of Brown, had in the course of two telephone conversations with her called her a "little shyster" and threatened to put her through bankruptcy and to have her criminally prosecuted. It is clear that "no reasonable interpretation of [this] evidence, viewed in the light most favorable to [Gillen], and including any inferences arising therefrom, could support a verdict in favor of [Gillen]." *McCain Foods, Inc. v. St. Pierre*, 463 A.2d at 788. The trial court properly granted Brown's motion for a judgment notwithstanding the

verdict on Count XVII of Gillen's counterclaim.

■ 4. Gillen next contends that the trial court erroneously dismissed Count VI of Gillen's counterclaim alleging that Brown terminated the parties' franchise agreement without good cause or adequate notice in violation of sections 2802 and 2804 of the federal Petroleum Marketing Practices Act, 15 U.S.C.A. §§ 2801–2841 (1982) (PMPA). The trial court's dismissal was based on the ground that the federal courts have exclusive jurisdiction over claims arising under the PMPA. We hold that state courts have concurrent jurisdiction over such claims. However, we agree with Brown's contention before the trial court and this court that Count VI of Gillen's counterclaim is barred by the one-year statute of limitations set forth in 15 U.S.C.A. § 2805.[4]

The PMPA authorizes a private civil action by a franchisee against a franchisor who fails to comply with the notification requirements of non-renewal or termination. 15 U.S.C.A. § 2805 (1982). In *Gulf Offshore Co. v. Mobil Oil Corp.*, 453 U.S. 473, 101 S.Ct. 2870, 69 L.Ed.2d 784 (1981), the United States Supreme Court provided the test by which we determine whether federal courts have exclusive jurisdiction or concurrent jurisdiction with state courts over causes of action that arise under federal statutes. The Court in *Gulf Offshore* held that a presumption that state courts have concurrent jurisdiction with federal courts exists, but that this presumption is rebuttable "by an explicit statutory directive, by unmistakable implication from legislative history, or by a clear incompatibility between state-court jurisdiction and federal interests." *Id.* at 478.

In dismissing Count VI of Gillen's counterclaim, the trial court relied on *Rustom v. Atlantic Richfield Company*, 618 F.Supp. 210 (C.D.Cal.1985), in which a federal dis-

trict court decided that the federal court should exercise exclusive jurisdiction over causes of action arising under the PMPA. In *Rustom*, the court found "a conspicuous absence in [both] the [Senate and House] Reports of any reference to the bringing of PMPA actions in state court[s]," and held that "the absence of reference to the state courts combined with Congress' affirmative references to the federal courts suggests an intent to make federal jurisdiction exclusive." *Id.* at 212. The court also found that the utilization of Federal Rules of Civil Procedure in PMPA for the award of damages and for the issuance of preliminary injunctions suggested exclusive jurisdiction in the federal courts. *Id.* However, other courts have rejected the reasoning of the *Rustom* court. *See Ted's Tire Service Inc. v. Chevron U.S.A., Inc.*, 470 F.Supp. 163, 165 (D.Conn.1979) (PMPA actions can be brought and maintained in state court).

We conclude that the trial court had jurisdiction of Gillen's claim arising under the PMPA. First, the PMPA does not expressly confine jurisdiction to federal courts. Section 2805(a) of the PMPA provides only that a private, civil action under the PMPA *"may* be brought" in a federal district court (emphasis added), not that such an action *must* be brought in federal court. Second, state court jurisdiction over the private actions authorized by the federal act will not frustrate the purposes of the PMPA. The PMPA was enacted to establish "protection for franchisees from arbitrary or discriminatory termination or non-renewal of their franchises." S.Rep. No. 731, 95th Cong., 2d Sess. 15, *reprinted in* 1978 U.S.Code Cong. & Admin.News 873, 874 [hereinafter "Senate Report"]. To alleviate the inherent disparity "of bargaining power which exists between the franchisor and the franchisee," Senate Report at 17, *reprinted at* 876, the PMPA provides

---

**4.** 15 U.S.C.A. § 2805 (1982) provides that no action under the PMPA may be maintained unless commenced within 1 year after the later of

(1) the date of termination of the franchise or nonrenewal of the franchise relationship; or

(2) the date the franchisor fails to comply with the requirements of section 2802 or 2803 of this title.

15 U.S.C. § 2802 (1982) applies to parties with a franchise relationship as in the instant case. Section 2803 applies only to a trial franchise and is not applicable to the instant case.

specific legitimate grounds and corresponding notice requirements for termination and non-renewal of franchise relationships, and prohibits termination on grounds other than those provided for in the statute. Finally, we perceive in the legislative history of the PMPA no "unmistakable implication" that the federal courts shall retain exclusive jurisdiction under the Act. Neither the absence of congressional references to state jurisdiction nor the incorporation of federal procedural standards provides evidence of congressional intent to limit state court jurisdiction that is so "unmistakable" that it overcomes the strong presumption of concurrent state court jurisdiction.

Brown's original complaint is dated March 31, 1986. Gillen for the first time alleged a claim under the PMPA by an amended counterclaim dated December 30, 1987. By that counterclaim, Gillen alleged, and does not now dispute, that "[o]n or about January 22, 1985, Brown unilaterally and without good cause or notice, terminated the then existing business relationship between the parties." Clearly, the complaint in this action and both Gillen's counterclaim and amended counterclaim were filed more than one year after any cause of action arose under the PMPA.

■ We find no merit in Gillen's argument that 14 M.R.S.A. § 865 (1980)[5] exempts this count of her counterclaim from the bar of the federal statute of limitation contained in 15 U.S.C. § 2805. By its own terms, section 865 only applies to "[a]ll the provisions hereof respecting limitations," meaning all provisions respecting limitations contained in chapter 205 of Title 14 of the Maine Revised Statutes and does not govern a federal statute of limitations on a cause of action arising under a federal statute. Although the trial court properly dismissed this count of Gillen's counterclaim,

the dismissal should have been on the ground that it was barred by the one-year statute of limitations provided in 15 U.S.C. § 2805. *See Trautvetter v. Town of Old Orchard Beach*, 566 A.2d 82, 83 (Me.1989) (when facts determined, appellate court can substitute its judgment for that of trial court as to proper ground for relief granted by trial court).

5. Gillen next contends that the trial court also erroneously dismissed Count I of the counterclaim, alleging that Brown terminated the parties' relationship without either good cause or adequate notice in violation of subsections 1454(2) & (3) of the Maine Motor Fuel Distribution and Sales Act, 10 M.R.S.A. §§ 1451–1457 (1980 & Supp.1989) ("the Maine Act") on the ground that the claim was preempted by the PMPA. We disagree. Gillen's sole claim under the Maine Act was the failure of Brown to give at least forty-five days prior notice of the termination of the franchise agreement between the parties as required by 10 M.R.S.A. § 1454(3)(A). Section 2804 of the Petroleum Marketing Practices Act requires 90 days notice before termination.

In *Alessi v. Raybestos–Manhattan, Inc.*, 451 U.S. 504, 101 S.Ct. 1895, 68 L.Ed.2d 402 (1981), the United States Supreme Court stated:

Although the Supremacy Clause invalidates state laws that "interfere with, or are contrary to the laws of Congress ...," *Gibbons v. Ogden* [22 U.S.] 9 Wheat 1, [210–211] 6 L.Ed. 23 (1824), the " 'exercise of federal supremacy is not lightly to be presumed.' " *New York Dept. of Social Services v. Dublino*, 413 U.S. 405, 413, 37 L.Ed.2d 688, 93 S.Ct. 2507 [2513] (1973), quoting *Schwartz v. Texas*, 344 U.S. 199, 203, 97 L.Ed. 231, 73 S.Ct. 232 [235] (1952).

---

5. 14 M.R.S.A. § 865 provides:

**Application of limitations to counterclaims.** All the provisions hereof respecting limitations apply to any counterclaim by the defendant except a counterclaim arising out of the transaction or occurrence that is the subject matter of the plaintiff's claim to the extent of the demand in the plaintiff's claim. The time of such limitation shall be computed

as if an action had been commenced therefor at the time the plaintiff's action was commenced.

*See also* 1 Field, McKusick & Wroth, *Maine Civil Practice* § 13.8a (1970) (" 'any counterclaim' that would not have been timely as an independent action when plaintiff commenced his suit is barred by the statute of limitations").

*Id.* at 522, 101 S.Ct. at 1905. In *Director of Bureau of Labor Standards v. Fort Halifax Packing Company*, 510 A.2d 1054 (Me.1986), we stated that "[a] conflict warranting preemption may be direct in that the state regulation obviously contradicts federal regulation, or it may arise from congressional intent, either express or implied, to occupy a particular area." *Id.* at 1057. "Preemption, however, is not a favored concept, and federal regulation will be deemed to be preemptive of state regulatory powers only if grounded in 'persuasive reasons—either the nature of the regulated subject matter permits no other conclusion or that Congress has unmistakably "so ordained." ' " *Id.* at 1057–58 (citing *Alessi*, 451 U.S. at 522, 101 S.Ct. at 1905 (quoting *Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142, 83 S.Ct. 1210, 1217, 10 L.Ed.2d 248 (1963))).

Our inquiry into whether the Maine Act is preempted is made simple by the clarity with which Congress expressed its intent that the PMPA should "occupy the field" of petroleum franchise termination and non-renewal. Section 2806(a) of the PMPA specifically states:

> To the extent that any provision of this subchapter applies to the termination (or the furnishing of notification with respect thereto) of any franchise ... no State ... may adopt, enforce, or continue in effect any provision of any law or regulation ... with respect to termination (or the furnishing of notification with respect thereto) of any such franchise ... unless such provision of such law or regulation is the same as the applicable provision of this subchapter.

15 U.S.C. § 2806(a). *See also Bellmore v. Mobil Oil Corp.*, 783 F.2d 300, 305 (2d Cir.1986) (although the PMPA does not preempt all state laws regulating petroleum franchises, it expressly preempts state rules governing the grounds for termination or non-renewal and accompanying notice requirements); Senate Report at 18–19, *reprinted at* 877 (congressional intent was to create uniform rules for grounds of termination and non-renewal and for accompanying notice requirements).

In *Webber Oil Co. v. Murray*, 551 A.2d 1371 (Me.1988), we noted that when provisions of the PMPA and provisions of the Maine Act differ, " '[t]o the extent that the provisions of [the PMPA] do not apply to an aspect of the franchise relationship, [the Maine Act] dealing with such aspects of the relationship [is] not preempted.' " *Id.* at 1374 (quoting Senate Report at 42, *reprinted at* 900). However, when the provisions of the PMPA and the provisions of the Maine Act differ, to the extent that the provisions of the PMPA do apply, the Maine Act is preempted.

 Because section 1454(3) is preempted by section 2804 of the PMPA, the trial court committed no error by dismissing Count I of Gillen's counterclaim alleging insufficient notice of the termination of the franchise agreement under section 1454(3) of the Maine Act. Gillen did not seek relief under the provisions of section 1454(1) of the Maine Act and none of the subjects controlled by that section are at issue in this case. Accordingly, we need not address Gillen's contention that the non-waivable provisions of that section are not preempted by the PMPA.

 6. Gillen next contends that the trial court erred in directing a verdict for Brown on Count XVIII of Gillen's counterclaim for punitive damages. We disagree. In reviewing a directed verdict, we consider the evidence, including every justifiable inference that may be drawn therefrom, in the light most favorable to the party against whom the verdict was directed. *Baker v. Mid Maine Medical Center*, 499 A.2d 464, 466 (Me.1985); *Poirier v. Hayes*, 466 A.2d 1261, 1263 (Me.1983). If by any reasonable view of this evidence a jury verdict for the non-moving party could be sustained, the granting of a directed verdict is improper. *Baker*, 499 A.2d at 466; *Packard v. Central Maine Power Co.*, 477 A.2d 264, 267 (Me.1984).

 In general, punitive damages are available based on tortious conduct only if the defendant acted with malice. *Tuttle v. Raymond*, 494 A.2d 1353 (Me.1985).

[M]alice exists where the defendant's tortious conduct is motivated by ill will to-

ward the plaintiff.... Punitive damages will also be available, however, where deliberate conduct by the defendant, although motivated by something other than ill will toward any particular party, is so outrageous that malice toward a person injured as a result of that conduct can be implied.

*Id.* at 1361 (citations omitted).

■ Viewed in the light most favorable to Gillen, the evidence demonstrates that Brown breached a series of promises relating to the parties' contractual relationship. Specifically, Brown reneged on a promise to deliver fuel within 24 hours of order, Brown charged Gillen higher prices for petroleum products than promised, and Brown failed to deliver equipment and transport vehicles promised for use by Gillen's Bangor fuel-oil business. Additionally, when the relationship between the parties collapsed, harsh words and accusations were exchanged. We conclude that the trial court properly held that this evidence is insufficient either to show malice or to give rise to an inference of malice. The trial court properly determined that the evidence in this record would not support an award of punitive damages to Gillen and directed a verdict in favor of Brown on Count XVIII of Gillen's counterclaim.

■ 7. Gillen further contends that the trial court erred by directing a verdict for Brown on Count XIX of Gillen's counterclaim seeking damages for the alleged negligent manner in which the new underground petroleum tanks were installed at the Winterport store by Simard. We disagree. At common law in Maine, one who hires an independent contractor to do a job is not liable for the independent contractor's negligence. *Leavitt v. Bangor and Aroostook Railroad Co.,* 89 Me. 509, 36 A. 998 (1897); *Wilbur v. White,* 98 Me. 191, 56 A. 657 (1903). In *Baker Bus Service, Inc. v. Keith,* 416 A.2d 727, 730 (Me.1980), we held that "the distinction between an agent-servant and an agent-independent contractor is whether the agent's performance with respect to his physical conduct is subject to another's control or right to control." *See also Restatement (Second) of Agency* § 2 comment (b) (1958) (one who contracts to complete a job for another who reserves no direction over the conduct of the work is an independent contractor).

The trial court held that the evidence could only support a finding that Simard was an independent contractor, stating "the evidence seemed to me to be totally overwhelming here and beyond dispute that Simard was doing a contract job.... [a]nd I really can't see any evidence whatsoever of agency." Upon reviewing the record, we see no error in the trial court's evaluation of the evidence. The trial court properly granted Brown's motion for a directed verdict on Count XIX of Gillen's counterclaim.

■ 8. Finally Gillen challenges the trial court's refusal to poll the jury after the announcement of the jury's verdict in order to determine the jury's intention in reducing the damage award from $100,000 to $25,000 on Count XV of Gillen's counterclaim and to determine whether the jury properly understood the operation of the Maine "comparative negligence" statute. *See* 14 M.R.S.A. § 156 (1980). On Count XV the jury determined, as recorded on the special verdict form, that Brown's negligent failure to warn Simard of the leak in the old underground storage tank resulted in an injury to Gillen in the amount of $100,000 but that Gillen was contributorily negligent and accordingly reduced the damage award to $25,000.

In *Patterson v. Rossignol,* 245 A.2d 852 (Me.1968), we recognized that "[a]ny party has the right to ascertain through the polling of the jury whether the verdict as announced in open court meets with the individual assent of each juror." *Id.* at 855. *See also* 1 Field, McKusick & Wroth, *Maine Civil Practice* § 49.3a (1970) (while not a matter of right of any party, trial judges in Maine customarily poll juries at request of either party). However, in *Patterson* we condemned the practice of inquiring of a juror what occurred during jury deliberations,

not only as a useless gesture, but as undesirable and highly unethical and improper. Jurors must receive court pro-

tection against private investigations by defeated counsel unless the purpose thereof be to establish proof of external misconduct of individual jurors or of the existence of an outside influence which our Court has recognized as an exception to the rule of exclusion.

*Id.* at 858. Further, to demonstrate the dangers to the sanctity of the jury's deliberations protected by this rule, we stated:

"If jurors are conscious that they will be subjected to interrogation or searching hostile inquiry as to what occurred in the jury room and why, they are almost inescapably influenced to some extent by that anticipated annoyance. The courts will not permit that potential influence to invade the jury room. He who makes studied inquiries of jurors as to what occurred there acts at his peril, lest he be held as acting in obstruction of the administration of justice."

*Id.* at 857 (quoting *Rakes v. United States,* 169 F.2d 739, 745–46 (4th Cir.1948), *cert. denied,* 335 U.S. 826, 69 S.Ct. 51, 93 L.Ed. 380 (1948).

As Gillen's request was not designed to produce evidence of either external misconduct of individual jurors or the existence of an outside influence, the trial court properly refused to poll individual jurors to determine the intent of the jury's actions or understanding of the comparative negligence instruction given to the jury by the trial court. *Thomas v. Wilson,* 356 A.2d 737, 740 (Me.1976) (holding that in the absence of outside influence court shall not poll the jury to determine the jury's understanding of a comparative negligence instruction).

### Brown's Cross-appeal

1. Brown first contends that its motion for judgment notwithstanding the verdict on Counts VII, IX and X of Gillen's counterclaim was erroneously denied because there was no evidence presented on which the jury lawfully could have found damages for Brown's alleged failure to make timely deliveries of petroleum products. We disagree.

When reviewing a trial court's denial of a motion for judgment notwithstanding the verdict, we determine "whether by any reasonable view of the evidence, including the inferences to be drawn therefrom, taken in the light most favorable to [the non-moving party], the verdict can be sustained." *Pombriant v. Blue Cross/Blue Shield of Maine,* 562 A.2d 656, 659 (Me.1989). "The judgment in favor of [the non-moving party] must stand unless it is clearly erroneous." *Id.* at 659. The record in the instant case reveals that the trial court properly determined that viewed in the light most favorable to Gillen the evidence was sufficient to withstand Brown's motion.

2. Brown next contends that its motion seeking a remittitur of the jury's award of damages on Counts II through IV of the counterclaim (alleging Brown's breach of contract with Gillen on the Bangor store) from $21,000 to $5,000 was erroneously denied because the $21,000 jury award was improperly based on evidence of the anticipated lost profits of a new business venture. We disagree.

Competent evidence in the record demonstrates that Gillen expended approximately $35,000 on the lease and improvements of the Bangor property prior to its being opened for business. Additionally, Brown concedes, as it must, that the trial court properly instructed the jury that Gillen could not recover damages for any future lost profits. Absent unusual circumstances, we assume a jury has followed the court's instructions when the instructions are clear and the circumstances are such that the jury can reasonably be expected to follow them. *State v. Trafton,* 425 A.2d 1320, 1324 (Me.1981). The trial court properly held that the evidence presented was sufficient to support the amount of the jury award. Since the record reflects that no damages were awarded to Gillen for alleged negligent misrepresentations by Brown, we need not address Brown's final contention that the trial court erred in not granting Brown's motion to dismiss all the counts of Gillen's counterclaim seeking damages on this ground.

Without objection from Gillen, Brown made a motion before this court to amend the judgment for Brown to reflect the total amount awarded to it by the jury verdict and the amounts awarded by the two directed verdicts. When there is a verdict for a plaintiff on his complaint and a verdict for a defendant on a counterclaim, judgment should be entered for the party whose verdict is larger in a sum equal to the difference between the two verdicts. *See* 2 Field, McKusick & Wroth, 2 *Maine Civil Practice* § 58.3 (1970).

The entry is:

Judgment notwithstanding the verdict on Count XV of the counterclaim is vacated.

Judgments for the plaintiff in the amounts of $3,829.62, $1,995.32 and $14,523.67 vacated, and judgment for the defendants in the amount of $58,200 vacated.

Remanded to the Superior Court for an entry of a judgment for the defendants, Katie Gillen d/b/a Gillen's Store and Gillen's Maine Grocer, Inc., in the amount of $62,851.39 consistent with the opinion herein.

All concurring.