PENNZOIL COMPANY, Appellant, v GEORGE A. CARLSON, Respondent.

Fourth Department, June 22, 1990

## APPEARANCES OF COUNSEL

*Wright, Wright & Hampton (Craig Jones* of counsel), for appellant.

*Jaeckle, Fleischmann & Mugel (John Stenger* of counsel), for respondent.

## OPINION OF THE COURT

DENMAN, J. P.

 Pennzoil Company appeals from an order that denied its motion for summary judgment dismissing defendant Carlson's sixth and seventh affirmative defenses and counterclaims alleging violations of, respectively, the Federal Petroleum Marketing Practices Act (PMPA) (15 USC § 2801 *et seq.)* and article 11-B of the New York General Business Law (General Business Law § 199-a *et seq.).* Plaintiff contends that the

PMPA claim is subject to exclusive Federal jurisdiction; that the General Business Law claim is preempted by the PMPA; and that both claims are barred by the Statute of Limitations. We conclude that State courts have concurrent jurisdiction over PMPA claims; that the PMPA preempts defendant's General Business Law claim; and that defendant's PMPA claim, which was interposed in the amended answer, relates back to the original answer and thus is not barred by the Statute of Limitations. We thus modify to dismiss defendant's seventh affirmative defense and counterclaim alleging plaintiff's violation of General Business Law article 11-B; in all other respects we affirm.

THE FACTS

According to defendant, George A. Carlson, whose allegations and proof must be taken as true in this procedural posture, he first entered into a business relationship with plaintiff Pennzoil (actually, with its predecessor, the Fleet Wing Division of Sohio) in 1970 or 1972. Either in his own name or in the name of his business, Robo Wash of Jamestown, defendant began purchasing motor fuel and other petroleum products from plaintiff for resale. In 1976 defendant was approached by plaintiff's representatives, who suggested that defendant form a corporation with Sandy Galati, also a local purchaser of Pennzoil products, so that the new entity could become a distributor of Pennzoil products. Sometime between 1976 and 1978, defendant and Galati formed a corporation known as "Hal-Sand", through which defendant and Galati operated the Jamestown distributorship of Pennzoil products using the Pennzoil trademark. Around 1980, defendant and Galati were again approached by Pennzoil representatives, who proposed that they purchase a second Pennzoil distributorship in Lakewood that had previously been operated by Pennzoil. Defendant and Galati formed Jamestown Petroleum Sales & Services, Inc. (Jamestown Petroleum) for the purpose of purchasing and operating the Lakewood distributorship and continuing to operate their Jamestown distributorship. Through Jamestown Petroleum, defendant and Galati went into possession of the Lakewood distributorship in June 1980, although an agreement between Jamestown Petroleum and Pennzoil for the sale of the Lakewood real property never closed.

In January 1981, representatives of plaintiff advised defen-

dant that several checks from Jamestown Petroleum had been dishonored and that it was over $600,000 in arrears for products ordered from Pennzoil. Pennzoil determined to discontinue its relationship with Galati but was willing to continue "business as usual" with defendant. The parties entered into negotiations to resolve Pennzoil's claim against Jamestown Petroleum and to determine whether defendant could keep the distributorship. By March 1981, those negotiations led to an oral settlement agreement pursuant to which defendant personally executed a promissory note in the amount of $136,000, representing part of the debt owed by Jamestown Petroleum. The express consideration for defendant's personal assumption of that indebtedness included plaintiff's oral commitments to:

(a) allow defendant to continue as a Pennzoil distributor upon the same terms and conditions as theretofore existed between Pennzoil and Jamestown Petroleum;

(b) provide defendant with a $70,000 line of credit for the purchase of Pennzoil inventory; and

(c) transfer to defendant the operations of the Lakewood distributorship and the real property upon which it was located.

Pursuant to the oral agreement between defendant and Pennzoil, defendant paid approximately $63,000 in principal and interest on the note but, at some point prior to September 1983, ceased payment. In the interim, following defendant's execution of the note, plaintiff told defendant that it had decided to close the Lakewood distributorship. Defendant agreed to release plaintiff from its obligation to transfer the Lakewood distributorship to defendant in exchange for plaintiff's promise to allow defendant to continue to service the accounts of the Lakewood distributorship from his other location. In reliance upon those representations, defendant executed a "Mutual Cancellation" agreement, following which Pennzoil sold the Lakewood distributorship to a third party without notice to defendant. Plaintiff did not allow defendant to continue to operate as a Pennzoil distributor, did not transfer the Lakewood distributorship to him, and failed to supply him with the agreed-upon line of credit, thus failing to fulfill the promises that had induced defendant to execute the note and the "Mutual Cancellation" agreement. Defendant

stopped payment on the note as a result of plaintiff's failure to fulfill its obligations.[1]

Plaintiff commenced this action in September 1983 to recover $114,794.64, the balance due on the note, plus interest. In his original answer, which was served on or about October 26, 1983, defendant admitted that he had ceased paying on the note, but denied liability. Defendant's answer asserted affirmative defenses and counterclaims alleging fraud and breach of contract based on plaintiff's failure to fulfill its obligations under the alleged oral distributorship agreement, and seeking rescission of the note and compensatory and punitive damages. In its reply to defendant's counterclaims, plaintiff denied making the representations or promises alleged by defendant.

In August 1985, approximately two years after the alleged breach by plaintiff, defendant, pursuant to a stipulation between the parties, served an amended answer containing seven affirmative defenses and counterclaims. The amended answer alleged, as "facts common to all counterclaims and affirmative defenses", the same transactions and occurrences as alleged in the original answer; however, new theories were alleged in the sixth and seventh affirmative defenses and counterclaims. The sixth alleged that plaintiff violated the termination and notice of termination requirements of the Federal Petroleum Marketing Practices Act (15 USC § 2802 [b] [2], [3]; § 2804). In support of that claim, defendant alleged that he was a "franchisee", "distributor", and "retailer" of plaintiff's products, as defined by the Federal act (15 USC § 2801 [4], [6], [7]). In his seventh affirmative defense and counterclaim, defendant alleged that plaintiff violated the termination and notification requirements of New York General Business Law § 199-c (1), (3). In support of that claim, defendant alleged that he was a "dealer" and Pennzoil a "distributor" within the meaning of General Business Law § 199-a (1), (2), and that his agreement with plaintiff was a "franchise" within the meaning of General Business Law § 199-a (3). Under the sixth counterclaim, defendant alleged

---

1. We reiterate that the version of events set forth herein is defendant's. Plaintiff counters with the alternative contentions that (1) it did not make the promises ascribed to it by defendant; and (2) that if it did, nonperformance of those promises was justified by defendant's default in payment on the note.

that plaintiff accomplished the illegal termination by ceasing to sell petroleum products to defendant, by withdrawing defendant's authority to sell petroleum products under the Pennzoil brand name, and by removing the Pennzoil trademark and signs from defendant's premises. Under the seventh counterclaim, defendant alleged that plaintiff accomplished the illegal termination by ceasing to sell fuel to defendant and by withdrawing defendant's authority to use the Pennzoil trademark and sign. Under each counterclaim, defendant alleged that plaintiff failed to give any notice of termination.

In its amended reply, plaintiff generally denied the allegations of the amended answer, specifically denied that defendant or any corporation in which he owned an interest was a distributor or franchisee of Pennzoil, and alleged, as an affirmative defense, that any such claim was time barred.

### THE MOTION

In November 1989, plaintiff moved for summary judgment dismissing defendant's sixth and seventh affirmative defenses and counterclaims. Plaintiff argued that the PMPA claim is subject to exclusive Federal jurisdiction, that the General Business Law claim is preempted by the Federal statute, and that both claims are barred by the Statute of Limitations. Defendant opposed the motion.

The court determined that State and Federal courts have concurrent jurisdiction over PMPA claims; that the General Business Law claim is not inconsistent with, and thus not preempted by, the PMPA claim; and that the General Business Law and PMPA claims asserted in the amended answer relate back to the original answer and thus are timely. Accordingly, the court denied plaintiff's motion for summary judgment.

### SUBJECT MATTER JURISDICTION

■ Plaintiff's first contention is that the court lacks subject matter jurisdiction over claims arising under the Federal PMPA because such claims may be brought only in Federal court. In general, there is a presumption that State courts have concurrent subject matter jurisdiction over Federal claims (*Tafflin v Levitt,* 493 US —, 110 S Ct 792, *reh denied* — US —, 110 S Ct 1942; *Yellow Frgt. Sys. v Donnelly,* 494 US —, 110 S Ct 1566; *Simpson Elec. Corp. v Leucadia, Inc.,* 72 NY2d 450, 455). Under our system of dual sovereignty, " 'state

courts have inherent authority, and are thus presumptively competent, to adjudicate claims arising under the laws of the United States' " *(Yellow Frgt. Sys. v Donnelly, supra,* 494 US at —, 110 S Ct, at 1568, quoting *Tafflin v Levitt, supra; see, Gulf Offshore Co. v Mobil Oil Corp.,* 453 US 473, 477-478; *Dowd Box Co. v Courtney,* 368 US 502, 507-508). As a result of that presumption, " 'exclusive federal court jurisdiction over cases arising under federal law has been the exception rather than the rule' " *(Tafflin v Levitt, supra,* 493 US, at —, 110 S Ct, at 795, quoting *Dowd Box Co. v Courtney, supra).* On the other hand, Congress may confine jurisdiction of a Federally created claim to the Federal courts, and is deemed to do so where, in the exercise of its powers under the Supremacy Clause, it affirmatively divests State courts of their concurrent jurisdiction *(Yellow Frgt. Sys. v Donnelly, supra; Tafflin v Levitt, supra; Claflin v Houseman,* 93 US 130, 136-137). Such ouster of State court jurisdiction over a particular Federal claim may be explicit or implicit *(Tafflin v Levitt, supra).* " 'Thus, the presumption of concurrent jurisdiction can be rebutted by an explicit statutory directive, by unmistakable implication from legislative history, or by a clear incompatibility between state-court jurisdiction and federal interests' " *(Tafflin v Levitt, supra,* 493 US, at —, 110 S Ct, at 795, quoting *Gulf Offshore Co. v Mobil Oil Corp., supra; see also, Simpson Elec. Corp. v Leucadia, Inc., supra).* Those principles, "which have 'remained unmodified through the years' * * * provide the analytical framework for resolving this case" *(Tafflin v Levitt, supra,* 493 US, at —, 110 S Ct, at 795), specifically, the issue whether a New York court can exercise jurisdiction over a claim brought pursuant to the Federal PMPA.

At the outset, we note that this precise jurisdictional issue has not been directly considered by an appellate court in this State, although the Court of Appeals in *Simpson, (supra)* touched upon the issue in dictum *(Simpson Elec. Corp. v Leucadia, Inc., supra,* at 458-459). Among those Federal and State courts that have directly considered the issue of State court jurisdiction under the PMPA, the decisions are about evenly split *(compare, Brown Co. v Gillen,* 569 A2d 1206 [Me 1990] [concurrent jurisdiction]; *Wirkkula v Union Oil Co.,* 100 Ore App 219, 785 P2d 372 [1990] [same]; *Sun Ref. & Mktg. Co. v D'Arpino,* 112 FRD 668 [SD NY 1986] [same]; *and Ted's Tire Serv. v Chevron U.S.A.,* 470 F Supp 163, 165 [D Conn 1979] [same; cited with apparent approval by the Court of Appeals in *Simpson Elec. Corp. v Leucadia, Inc., supra], with Johnson v*

*Mobil Oil Corp.,* 522 Pa 105, 560 A2d 124 [1989] [exclusive Federal jurisdiction]; *Niakan v Samaan,* 199 Cal App 3d 716, 245 Cal Rptr 24 [1988], *cert denied* 488 US 986 [same]; *Elimelekh v Texaco Ref. & Mktg.,* Bus Franchise Guide [CCH] ¶ 8663, at 16751-16752 [CD Cal 1986] [same]; *and Rustom v Atlantic Richfield Co.,* 618 F Supp 210 [CD Cal 1985] [same]). Based upon our review of the divergent authorities, and applying the relevant test, we conclude that those decisions that find concurrent jurisdiction are more persuasive.

In evaluating this case under the first prong of the *Gulf Offshore* test, we believe it is clear that the PMPA does not explicitly provide for exclusive Federal jurisdiction, and plaintiff concedes as much. 15 USC § 2805 (a), entitled "Enforcement provisions", provides in pertinent part: "If a franchisor fails to comply with the requirements of [the act], the franchisee may maintain a civil action against such franchisor. Such action *may be brought,* without regard to the amount in controversy, *in the district court of the United States* in any judicial district in which the principal place of business of such franchisor is located or in which such franchisee is doing business". (Emphasis supplied.) Although the act makes no reference to concurrent State court jurisdiction over PMPA claims, "[u]nlike a number of statutes in which Congress unequivocally stated that the jurisdiction of the federal courts is exclusive," nothing in the act "confines jurisdiction to federal courts or ousts state courts of their presumptive jurisdiction" *(Yellow Frgt. Sys. v Donnelly, supra,* 494 US, at —, 110 S Ct, at 1568-1569). As the Supreme Court recently stated in *Tafflin,* in interpreting nearly identical language in the analogous context of a Federal RICO claim, "This grant of federal jurisdiction is plainly permissive, not mandatory, for '[t]he statute does not state nor even suggest that such jurisdiction shall be exclusive. It provides that suits of the kind described "may" be brought in the federal district courts, not that they must be.' * * * Indeed, '[i]t is black letter law * * * that the mere grant of jurisdiction to a federal court does not operate to oust a state court from concurrent jurisdiction over the cause of action' " *(Tafflin v Levitt, supra,* 493 US, at —, 110 S Ct, at 796).

Plaintiff relies on the second and third components of the *Gulf Offshore* test, arguing that exclusive Federal jurisdiction over PMPA claims is established by unmistakable implication from its language and legislative history and by a clear incompatibility between State court jurisdiction and Federal

interests. We disagree. A review of the language and legislative history of the PMPA does not reveal an unmistakable congressional intent to restrict jurisdiction to the Federal courts. Those courts that have held that Congress impliedly provided for exclusive Federal jurisdiction generally rely on three factors: (1) that the Senate and House reports state that the act is "enforceable by a private civil action in U. S. District Court"; (2) that 15 USC § 2805 (d) (1) (A) provides that an aggrieved franchisee may recover actual damages "consistent with the Federal Rules of Civil Procedure"; and (3) that 15 USC § 2805 (b) (2) provides standards for issuance of a preliminary injunction that are similar to those set forth under Federal Rules of Civil Procedure, rule 65 *(see, Johnson v Mobil Oil Corp., supra,* 560 A2d, at 125-126; *Rustom v Atlantic Richfield Co., supra,* at 212-213).

Plaintiff's brief sets forth a similar analysis, but we find it unpersuasive for various reasons. First, it is true that both the Senate and House reports state that "[t]he provisions of title I are enforceable by private civil action in U.S. District Court" (S Rep No. 95-731, 95th Cong, 2d Sess 16, reprinted in 1978 US Code Cong & Admin News 873, 874; HR Rep No. 95-161, 95th Cong, 1st Sess 14). Nevertheless, the reference in the congressional reports to the maintenance of an action under the PMPA in Federal court does not imply exclusive Federal jurisdiction any more than does the similar reference in the statute. Like the statute itself, the legislative history conspicuously lacks any reference to the exclusivity of Federal jurisdiction. As held by numerous courts in this and other contexts, the absence of reference to State court jurisdiction combined with affirmative references to Federal court jurisdiction does not, by itself, suggest an intent to make Federal jurisdiction exclusive *(Brown Co. v Gillen, supra,* at 1212; *Wirkkula v Union Oil Co., supra,* 785 P2d, at 374; *see generally, Yellow Frgt. Sys. v Donnelly, supra,* 494 US, at —, 110 S Ct, at 1569; *Tafflin v Levitt, supra,* 493 US, at —, 110 S Ct, at 796-797). To the contrary, "[t]he omission of any such provision [i.e., exclusivity] is strong, and arguably sufficient, evidence that Congress had no such intent" *(Yellow Frgt. Sys. v Donnelly, supra,* 494 US, at —, 110 S Ct, at 1569). Upon our reading of the statute and relevant legislative history, all that we can conclude is that Congress' overriding intent in enacting 15 USC § 2805 (a) was to create a Federal right of action, to provide that such Federal claim could be (but need not be) brought in Federal court, to do away with the monetary jurisdictional

requirement, and to provide for venue *(Wirkkula v Union Oil Co., supra,* 785 P2d, at 374; *Johnson v Mobil Oil Corp., supra,* 560 A2d, at 127 [Flaherty, J., dissenting]; *see generally, Tafflin v Levitt, supra).* The legislative history contains no indication that Congress considered the question of concurrent jurisdiction. We feel confident in concluding, as the courts have noted in this and analogous contexts, that " ' "no one even thought of the issue" ' " *(see, Tafflin v Levitt, supra,* 493 US, at —, 110 S Ct, at 796; *see also, Wirkkula v Union Oil Co., supra,* 100 Ore App, at —, 785 P2d, at 374 ["There is no reason to think that the committee had that issue in mind when it adopted the report"]).

■ We also reject plaintiff's argument that direct and indirect references in the PMPA to the Federal Rules of Civil Procedure impliedly but unmistakably commit exclusive jurisdiction over such claims to the Federal courts. Plaintiff takes the position that it would have been anomalous for Congress to refer to the Federal Rules of Civil Procedure if State court jurisdiction were a possibility. As noted by the Court of Appeals of Oregon, however, the statutory provision authorizing the recovery of damages "consistent with the Federal Rules of Civil Procedure" (15 USC § 2805 [d] [1] [A]) is anomalous, and probably meaningless, even in the context of a Federal action. "The F.R.C.P. are rules of procedure that do not describe substantive criteria for determining damages. It is hard to fathom how a damage award would be 'consistent' or 'inconsistent' with procedural rules" *(Wirkkula v Union Oil Co., supra,* 100 Ore App, at —, 785 P2d, at 374). Similarly, we are unpersuaded by plaintiff's argument that exclusive Federal jurisdiction is established by the fact that the statute sets forth the same standards for the granting of preliminary injunctions as those contained in Federal Rules of Civil Procedure rule 65. If a direct reference to the Federal Rules does not signify exclusive Federal jurisdiction, neither does an indirect reference *(Wirkkula v Union Oil Co., supra).* In sum, exclusive Federal jurisdiction is not unmistakably implied by the fact that the Federal statute refers to procedural mechanisms that ordinarily would be applicable only in Federal actions *(see, Yellow Frgt. Sys. v Donnelly, supra,* 494 US, at —, 110 S Ct, at 1569-1570; *Tafflin v Levitt, supra,* 493 US, at —, 110 S Ct, at 799; *Simpson Elec. Corp. v Leucadia, Inc., supra,* 72 NY2d, at 459). We therefore conclude that Congress has not, by unmistakable implication, withdrawn PMPA claims from the jurisdiction of State courts.

█ Finally, there is no merit to plaintiff's contention that State court jurisdiction over PMPA claims would be clearly incompatible with Federal interests. The factors that might indicate clear incompatibility "include the desirability of uniform interpretation, the expertise of federal judges in federal law, and the assumed greater hospitality of federal courts to peculiarly federal claims" *(Gulf Offshore Co. v Mobil Oil Corp., supra,* at 483-484; *see, Tafflin v Levitt, supra; Simpson Elec. Corp. v Leucadia, Inc., supra,* at 460). Seizing upon the first factor, plaintiff points to Congress' intent in enacting the PMPA to create a "single, uniform set of rules governing the grounds for termination and non-renewal * * * of a franchise relationship" (S Rep No. 95-731, 95th Cong, 2d Sess 19, reprinted in 1978 US Code Cong & Admin News 873, 877). There doubtless is a strong Federal interest in uniformity of decisions interpreting the PMPA *(Wirkkula v Union Oil Co., supra,* 785 P2d, at 374; *Johnson v Mobil Oil Corp., supra,* 560 A2d, at 126-127). Nevertheless, exclusive Federal jurisdiction is not necessary to protect that interest *(see, Wirkkula v Union Oil Co., supra).* As has been cogently noted, "If the need for uniformity of decisions on important federal statutes were decisive in determining jurisdiction, then there would be no room for a presumption of concurrent state jurisdiction in most situations" *(Wirkkula v Union Oil Co., supra,* 100 Ore App, at —, 785 P2d, at 374). Thus, for various reasons, the courts have given the need for uniformity little weight in determining whether State courts have concurrent jurisdiction over Federal claims *(Wirkkula v Union Oil Co., supra; see, e.g., Tafflin v Levitt, supra,* 493 US, at —, 110 S Ct, at 798-799, 800 [White, J., concurring], 493 US, at —, 110 S Ct, at 802 [Scalia, J., concurring]; *Simpson Elec. Corp. v Leucadia, Inc., supra).* First, there is no reason why State courts cannot interpret and apply the language of the PMPA as well as the Federal courts can *(cf., Simpson Elec. Corp. v Leucadia, Inc., supra).* Second, with respect to the possibility of a divergency of interpretation, the " 'prospect of disagreement among the states' ", and, indeed, between State courts and Federal courts, " 'is [no] more of an impediment to implementation of federal interests than is the prospect of disagreement among the federal' " courts *(Wirkkula v Union Oil Co., supra,* 100 Ore App, at —, 785 P2d, at 374, quoting *Johnson v Mobil Oil Corp., supra,* 560 A2d, at 127 [Flaherty, J., dissenting]). Given the frequency of splits among Federal courts on questions of Federal law, State courts are not likely to cause significant

further division *(cf., Simpson Elec. Corp. v Leucadia, Inc., supra)*. Third, even in the event of a split between State and Federal courts concerning the proper interpretation and application of the PMPA, adjudication of such claims by State courts "will, in practice, have at most a negligible effect on the uniform interpretation and application of federal" law *(cf., Tafflin v Levitt, supra,* 493 US, at —, 110 S Ct, at 798). Federal courts will retain authority and responsibility for the interpretation and application of the act, and of course will not be bound by State court interpretations. On the other hand, State courts adjudicating PMPA claims will be guided by Federal court interpretations, and State court judgments misinterpreting a question of Federal law are, of course, subject to ultimate review by the United States Supreme Court *(see generally, Tafflin v Levitt, supra)*. In sum, since concurrent State jurisdiction over Federal claims is the rule rather than the exception, there is no basis for doubting "the ability of state courts to handle the complexities" of PMPA claims *(cf., Tafflin v Levitt, supra,* 493 US, at —, 110 S Ct, at 798). Thus, State court jurisdiction and Federal interest are not clearly incompatible.

"[T]he arguments for exclusive federal jurisdiction over an action under the PMPA are not strong enough to rebut the normal rule of concurrent state court jurisdiction" *(Wirkkula v Union Oil Co., supra,* 100 Ore App, at —, 785 P2d, at 375; *see, Brown Co. v Gillen,* 569 A2d 1206, *supra)*.

### PREEMPTION

■ Plaintiff next contends that defendant's General Business Law claim must be dismissed in its entirety because it is preempted by the PMPA. Analysis begins with the proposition that a Federal statute regulating interstate commerce preempts any State law purporting to regulate the same subject if Congress has demonstrated an intent to occupy the entire field of regulation, or if the State law either contravenes or frustrates the purpose of the Federal law. Thus, a finding of preemption is warranted where there is a direct conflict between the State regulation and Federal regulation, or where Congress has evinced an intent, express or implied, to occupy a particular area *(Alessi v Raybestos-Manhattan, Inc.,* 451 US 504, 522; *Jones v Rath Packing Co.,* 430 US 519, 525-526, *reh denied* 431 US 925; *Florida Avocado Growers v Paul,* 373 US 132, 142-143, *reh denied* 374 US 858). Our task

is to determine whether and to what extent Congress intended to occupy the field of petroleum franchising, and to what extent a possible conflict between Federal and State law should result in the preemption of State law. That task is "made simple by the clarity with which Congress expressed its intent that the PMPA should 'occupy the field' of petroleum franchise termination and non-renewal" *(Brown Co. v Gillen, supra,* at 1213). 15 USC § 2806 (a) provides, in pertinent part, "To the extent that any provision of this title applies to the termination (or the furnishing of notification with respect thereto) of any franchise * * * no State * * * may adopt, enforce, or continue in effect any provision of any law or regulation * * * with respect to termination (or the furnishing of notification with respect thereto) * * * of any such franchise relationship unless such provision of such law or regulation is the same as the applicable provision of this title."

The effect of that express preemption provision is clear. Although Congress did not intend to preempt "all" State law governing petroleum franchising *(Darling v Mobil Oil Corp.,* 864 F2d 981, 985 [2d Cir 1989]; *Atlantic Richfield Co. v Herbert,* 806 F2d 889, 892 [9th Cir 1986]), the statute does preempt all State statutes governing grounds for, procedures for, and notification requirements with respect to termination or nonrenewal of petroleum franchises "to the extent that the state law is not 'the same as' the corresponding federal act provisions" *(Darling v Mobil Oil Corp., supra,* at 986; *Atlantic Richfield Co. v Herbert, supra,* at 892-894; *Bellmore v Mobil Oil Corp.,* 783 F2d 300, 304-305 [2d Cir 1986]). Therefore, in determining the preemptive effect of the PMPA, it is necessary to examine defendant's claim and to undertake a side-by-side comparison of those provisions of the PMPA and General Business Law that relate to termination and notice of termination *(Darling v Mobil Oil Corp., supra; Bellmore v Mobil Oil Corp., supra).*

Defendant alleges that plaintiff violated both the PMPA and GBL by similar conduct. He alleges that, under both statutes, plaintiff failed to give defendant the requisite notice of termination and wrongfully terminated defendant's franchise. Thus, defendant's General Business Law claim is preempted if the termination and notification requirements of that statute are not "the same as" those set forth in the PMPA. Comparison of the two statutes reveals numerous inconsistencies and dissimilarities between them in their respective provisions governing

notification and termination *(compare,* General Business Law § 199-c [1], [2], [3], *with* 15 USC §§ 2802, 2804). Therefore, notwithstanding the considerable overlap between their provisions and their obvious common purpose to prohibit arbitrary termination of petroleum franchises, the relevant statutory provisions simply are not "the same as" one another. We thus conclude that defendant's General Business Law claim is wholly preempted and must be dismissed *(see, Brown Co. v Gillen, supra,* 569 A2d, at 1213; *Darling v Mobil Oil Corp., supra,* at 986-988; *Ricco v Shell Oil Co.,* 180 NJ Super 399, 434 A2d 1151, 1153-1154 [1981]; *Munno v Amoco Oil Co.,* 488 F Supp 1114 [D Conn 1980]).

### STATUTE OF LIMITATIONS

■ Plaintiff contends that defendant's PMPA claim must be dismissed because it was not brought within the time limitation prescribed by that statute.[2] Pursuant to 15 USC § 2805 (a) (1), (2), an action must be brought within one year following the date of the wrongful termination of the franchise or the date the franchisor otherwise failed to comply with the statute, whichever is later. Plaintiff contends that defendant's PMPA claim, which accrued in August 1983, was not timely commenced because it was not interposed until defendant served an amended complaint in August, 1985.

Defendant responds that the PMPA claim was timely interposed because it relates back to service of the original answer, which shortly followed the accrual date. We agree that the statutory claim asserted in the amended answer relates back to the original answer and thus is not barred by the Statute of Limitations.

CPLR 203 (e), which plaintiff concedes is applicable to this case, provides: "Claim in amended pleading. A claim asserted in an amended pleading is deemed to have been interposed at the time the claims in the original pleading were interposed, unless the original pleading does not give notice of the transactions, occurrences, or series of transactions or occurrences, to be proved pursuant to the amended pleading."

The statute requires a "transactional" analysis. In other words, where an original pleading gives notice of a particular transaction or occurrence, the Statute of Limitations is tolled

---

2. In view of our determination that the General Business Law claim must be dismissed as preempted, it is not necessary to consider whether it is time barred.

on all causes of action arising out of that transaction or occurrence, regardless of the legal theory. Thus, so long as the new pleading is based upon the same transaction as the original pleading, the new pleading may be interposed without regard to the Statute of Limitations and even may set forth new legal theories and elements of new causes of action.

The basis of plaintiff's Statute of Limitations argument is that the amended pleading, in setting forth an additional cause of action under the PMPA, is based upon new facts and thus is time barred. We disagree. In both the original answer and the amended answer, only one transaction is alleged—plaintiff's failure to fulfill an oral franchise agreement. In the original pleading, defendant relied on that transaction as the basis for two common-law causes of action, breach of contract and fraud. In the amended pleading, defendant relied on that same transaction as the basis for a new cause of action alleging violation of Federal statutes governing franchise termination. The amended complaint sets forth a new legal theory, but does not allege a transaction or occurrence distinct from that underlying the original answer.

Accordingly, the order appealed from should be modified to dismiss defendant's seventh affirmative defense and counterclaim, but otherwise is affirmed.

BOOMER, PINE, BALIO and DAVIS, JJ., concur.

Order unanimously modified, on the law, and, as modified, affirmed, without costs, in accordance with the opinion by DENMAN, J. P.