Lewis **ANDERSON, I.D. Breeden, Sr., Phil Kauble, Wade Kauble, and One Hundred and Twenty–Four (124) Others, Appellants–Plaintiffs,**

v.

**Joseph F. WOLFORD, Dennis J. Hein, Bruce A. Chalk, and unknown others, Appellees–Defendants.**

No. 27A02–9202–CV–86.

Court of Appeals of Indiana, Second District.

Dec. 16, 1992.

Rehearing Denied Jan. 27, 1993.

Mark Garringer, Indianapolis, for appellants-plaintiffs.

John Wood, Nancy Endsley, Bamberger & Feibleman, Indianapolis, for appellees-defendants.

SHIELDS, Judge.

Lewis Anderson, I.D. Breeden, Sr., Phil Kauble, and One Hundred and Twenty Four Others (Anderson) appeal the dismissal of their federal RICO Act claim.

We affirm.

## ISSUES

Anderson raises four issues for our review which we rephrase as:[1]

1. Does a state court have jurisdiction of a federal RICO claim?

2. Did the trial court err by failing to articulate its jurisdictional authority to distribute the charitable fund?[2]

## FACTS

Following the closing of Continental Steel Corporation (Continental) in 1986, Joseph Wolford and other former Continental employees organized fundraising activities at the local union hall to provide emergency relief to unemployed Continental workers. The Continental Employees Assistance Fund (CEAF) distributed food and provided money for prescription drugs until January 1988. The balance remaining in the CEAF was placed in a money market savings account.

On October 18, 1989, the Pension Rights Committee (Committee), an unincorporated association, filed an action against Joseph Wolford and unknown others seeking an accounting of the CEAF pursuant to Indiana trust law.

On December 15, 1989, Wolford moved to dismiss the action, contending the CEAF was not a trust within the meaning of Indiana law and the Committee lacked standing to file a claim.

---

1. Anderson states one issue as: "Can officers of labor organizations operate a purported employee welfare fund in a fraud and sham on the public and divvy the booty amongst themselves under Indiana law." Appellant's Brief at 15. This issue is waived because the accompanying argument fails to comply with Ind.Appellate Rule 8.3(A)(7), which requires that a brief contain "the reasons in support of the contentions along with citations to the authority, statutes, and parts of the record relied upon, and a clear showing of how the issues and contentions in support thereof relate to the particular facts of the case under review." *See Cammack v. State* (1970), 254 Ind. 637, 638, 261 N.E.2d 862, 863; *Hoover v. State* (1991), Ind., 582 N.E.2d 403, 410.

2. In addition, Wolford argues any error in the trial court's judgment is moot because the fund has been distributed pursuant to that judgment. However, we address the issue in order to allay any concerns of the donees.

On February 23, 1990, the Committee amended its complaint, substituting as plaintiffs Lewis Anderson, I.D. Breeden, Sr., Phil Kauble, and One Hundred and Twenty Four Others (Anderson), and adding Dennis Hein and Bruce Chalk as defendants. (The defendants will be collectively referred to as "Wolford."). The amended complaint asserted a violation of the Indiana Racketeering Influenced and Corrupt Organizations Act (Indiana RICO)[3] and sought actual, treble, and punitive damages, along with any balance in the money market account, for the benefit of the Howard County Center Township Trustee or the Howard County Department of Public Welfare.

On April 16, 1990, Wolford filed a motion to dismiss the amended complaint, contending that Anderson lacked standing under Indiana RICO and that the amended complaint failed to state a claim.

On December 26, 1990, Wolford filed a supplemental motion to dismiss the amended complaint, and on May 20, 1991, sought authority to make final distribution of the balance of the CEAF to the Kokomo Rescue Mission.

On June 3, 1991, Anderson filed objections to Wolford's application for authority to make final distribution of the CEAF, which he supplemented on June 5, 1991. The supplemental objection asserts that the federal court may have exclusive jurisdiction over the CEAF pursuant to federal law, and that, aside from that jurisdiction question, the state court may lack jurisdiction over the funds of the CEAF if Wolford's pending motion to dismiss were to be granted. On June 7, 1991, the court dismissed the amended complaint.

On June 11, 1991, Anderson sought leave to file a second amended complaint, attaching a copy of a complaint filed as an original action in the United States District Court on June 7, 1991,[4] as a proposed second amended complaint. The proposed second amended complaint was based on the federal RICO statutes,[5] and added the United Steelworkers of America and Randy McKay as additional defendants.

On June 27, 1991, Anderson filed more objections to Wolford's application for distribution of the CEAF and requested the court distribute the CEAF to either the Howard County United Way or the Kokomo YMCA. On July 9, 1991, Anderson filed a motion to voluntarily dismiss the pending action.

On September 5, 1991, Wolford filed an amended application for authority to make a final distribution of the CEAF to the Howard County United Way. On September 6, 1991, Wolford filed a response in opposition to Anderson's motion to voluntarily dismiss and, on September 10, 1991, filed a response in opposition to Anderson's motion for leave to file a second amended complaint.

On November 6, 1991, the court, although acknowledging it had jurisdiction over a federal RICO action, denied Anderson's motion for leave to file a second amended complaint because it, too, failed to state a claim. The court also denied Anderson's motion to voluntarily dismiss, entered an order dismissing Anderson's purported action with prejudice, and ordered the CEAF distributed to the United Way of Howard County.

Anderson filed a praecipe. In the meantime, the remaining CEAF funds were paid to the Howard County United Way.

Anderson appeals.

## DISCUSSION

### I.

■ Although Anderson originally sought leave of the trial court to file a second amended complaint which purportedly asserted a claim under the federal civil RICO Act, 18 U.S.C. §§ 1964–68 (1990), he now argues federal courts have exclusive jurisdiction over such RICO claims, and,

---

**3.** *See* IC § 35–45–6–1 (1988).

**4.** On June 24, 1992, the U.S. District Court issued an order staying all proceedings in that court until thirty days after a decision by this court.

**5.** *See* 18 U.S.C. §§ 1961–68 (1990).

accordingly, the trial court erred in determining it had jurisdiction.

Anderson's argument ignores *Tafflin v. Levitt* (1990), 493 U.S. 455, 110 S.Ct. 792, 107 L.Ed.2d 887, which specifically holds that state courts have concurrent jurisdiction to consider civil claims arising under federal civil RICO. *Id.* at 467, 110 S.Ct. at 800.

The Supreme Court in *Tafflin* observed that:

Under our federal system, the States possess sovereignty concurrent with that of the Federal Government, subject only to limitations imposed by the Supremacy Clause. Under this system of dual sovereignty, we have consistently held that state courts have inherent authority, and are thus presumptively competent, to adjudicate claims arising under the laws of the United States.... This deeply rooted presumption in favor of concurrent state court jurisdiction is, of course, rebutted if Congress affirmatively ousts the state courts of jurisdiction over a particular federal claim.

*Id.* at 458–59 (citations omitted).

The Court proceeded to consider the issue "whether state courts ha[ve] been divested of jurisdiction to hear civil RICO claims 'by an explicit statutory directive, by unmistakable implication from legislative history, or by a clear incompatibility between state-court jurisdiction and federal interests.'" *Id.* at 460 (quoting *Gulf Offshore Co. v. Mobil Oil Corp.* (1981), 453 U.S. 473, 478, 101 S.Ct. 2870, 2875, 69 L.Ed.2d 784).

The Court in *Tafflin* examined the statutory provision authorizing RICO claims, 18 U.S.C. § 1964(c), and found:

This grant of federal jurisdiction is plainly permissive, not mandatory, for the statute does not state nor even suggest that such jurisdiction shall be exclusive. It provides that suits of the kind described "may" be brought in the federal district courts, not that they must be.

Indeed, it is black letter law that the mere grant of jurisdiction to a federal court does not operate to oust a state court from concurrent jurisdiction over the cause of action.

*Tafflin*, 493 U.S. at 460–61, 110 S.Ct. at 796 (citations omitted).

Further, according to the Court, exclusive federal jurisdiction over civil RICO actions cannot be established by unmistakable implication from legislative history, or by a clear incompatibility between state court jurisdiction and federal interests.

Our review of the legislative history ... reveals no evidence that Congress even considered the question of concurrent state court jurisdiction over RICO claims, much less any suggestion that Congress affirmatively intended to confer exclusive jurisdiction over such claims on the federal courts.

*Tafflin*, 493 U.S. at 461, 110 S.Ct. at 796. *See also Brandenburg v. Seidel* (1988), 4th Cir., 859 F.2d 1179, 1193 ("The legislative history contains no indication that Congress ever expressly considered the question of concurrent jurisdiction; indeed, as the principal draftsman of RICO has remarked, 'no one even thought of the issue.'" (quoting Flaherty, *Two States Lay Claim to RICO*, Nat'l L.J., May 7, 1984, p. 10, col. 2)).

The Court also rejected the argument that state court jurisdiction over civil RICO claims would be incompatible with federal interests. The factors indicating clear incompatibility "include the desirability of uniform interpretation, the expertise of federal judges in federal law, and the assumed greater hospitality of federal courts to peculiarly federal claims." *Gulf Offshore Co.*, 453 U.S. at 483–84, 101 S.Ct. at 2878 (citation and footnote omitted).

We perceive no "clear incompatibility" between state court jurisdiction over civil RICO actions and federal interests. As a preliminary matter, concurrent jurisdiction over § 1964(c) suits is clearly not incompatible with § 3231 itself,[6] for civil

---

**6.** Title 18 U.S.C. § 3231 (1990) provides:

The district courts of the United States shall have original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States.

RICO claims are not "offenses against the laws of the United States," and do not result in the imposition of criminal sanctions—uniform or otherwise. *See Shearson/American Express Inc. v. McMahon*, 482 U.S. 220, 240–241 [107 S.Ct. 2332, 2345, 96 L.Ed.2d 185] (1987) (civil RICO intended to be primarily remedial rather than punitive).

More to the point, however, our decision today creates no significant danger of inconsistent application of federal criminal law. Although petitioners' concern with the need for uniformity and consistency of federal criminal law is well-taken, federal courts, pursuant to § 3231, would retain full authority and responsibility for the interpretation and application of federal criminal laws, for they would not be bound by state court interpretations of the federal offenses constituting RICO's predicate acts. State courts adjudicating civil RICO claims will, in addition, be guided by federal court interpretations of the relevant federal criminal statutes, just as federal courts sitting in diversity are guided by state court interpretations of state law. State court judgments misinterpreting federal criminal law would, of course, also be subject to direct review by this Court. Thus, we think that state court adjudication of civil RICO actions will, in practice, have at most a negligible effect on the uniform interpretation and application of federal criminal law and will not, in any event, result in any more inconsistency than that which a multi-membered, multi-tiered federal judicial system already creates.

Moreover, contrary to petitioners' fears, we have full faith in the ability of state courts to handle the complexities of civil RICO actions, particularly since many RICO cases involve asserted violations of state law, such as state fraud claims, over which state courts presumably have greater expertise.

*Tafflin*, 493 U.S. at 465–66, 110 S.Ct. at 799 (citations omitted and footnote added).

Finally, the Court observed that instead of disabling or frustrating federal interests, " '[p]ermitting state courts to entertain federal causes of action facilitates the enforcement of federal rights,' " *id.* at 467, 110 S.Ct. at 800 (quoting *Gulf Offshore Co.*, 453 U.S. at 478, n. 4, 101 S.Ct. at 2875 n. 4), and to the extent that Congress intended RICO to serve broad remedial purposes,[7] concurrent state court jurisdiction over civil RICO claims will advance rather than jeopardize federal policies underlying the statute. *Id.*

Following the *Tafflin* decision, the trial court properly concluded it had concurrent jurisdiction to consider civil claims arising under RICO.

## II.

Anderson claims that the trial court had a duty to articulate its jurisdictional authority to distribute the remaining CEAF balance once he suggested that it lacked jurisdiction. He finds three reasons for this duty. First, he relies on the holding in *International Ass'n of Machinists and Aerospace Workers, Local No. 1227 v. McGill Mfg. Co.* (1975), 164 Ind.App. 321, 325, 328 N.E.2d 761, 764. In addition, he states the CEAF is governed by the Employee Retirement Income Security Act (ERISA)[8] and Congress "may" have given federal courts exclusive jurisdiction over ERISA funds. Appellant's Brief at 11. Finally, he maintains the defendant, United Steelworkers of America, is a labor organization under federal law and that Indiana's Anti–Injunction Act[9] withdraws state court jurisdiction whenever equitable relief is sought in a controversy involving labor disputes.

---

Nothing in this title shall be held to take away or impair the jurisdiction of the courts of the several States under the laws thereof.

**7.** *See* Pub.L. 91–452, § 904(a), 84 Stat. 947 (RICO must "be liberally construed to effectuate its remedial purposes.").

**8.** *See* 29 U.S.C. § 1001 *et seq.* (1990).

**9.** *See* IC § 22–6–1–1 to –12 (1988 & 1992 Supp.).

■ First, there is no merit to Anderson's claim a court must assert its jurisdictional basis for acting. The only relevant issue if the court acts is whether it has jurisdiction in fact. Although Anderson has correctly stated *McGill*'s holding that "[w]henever equitable relief is sought in the context of a controversy involving labor relations, the trial court must initially inquire whether the Anti–Injunction Act has withdrawn the court's jurisdiction to grant the desired remedy," *McGill,* 164 Ind.App. at 325, 328 N.E.2d at 764, the Anti–Injunction Act governs cases involving or growing out of labor disputes,[10] and the term "labor dispute" is clearly defined as:

> "any controversy concerning terms or conditions of employment or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment, regardless of whether or not the disputants stand in the proximate relation of the employer and employee."

IC § 22–6–1–12 (1988). The present case concerns a fund whose purpose was to provide emergency relief to unemployed Continental workers and cannot be characterized as concerning the terms or conditions of employment. It also does not involve a court issuing or denying injunctive relief. Thus, this dispute is not governed by the Anti–Injunction Act or case law relevant to the Act.

■ Anderson also claims the CEAF "certainly sounds like" an employee welfare plan under ERISA, 29 U.S.C. § 1002(3), and a labor organization under ERISA, 29 U.S.C. § 1002(4). Appellant's Brief at 11, 12. However, we need not determine whether the CEAF is an employee welfare plan or a labor organization controlled by ERISA, because the statute's language indicates that state and federal courts have concurrent jurisdiction over such claims.[11]

29 U.S.C. § 1132(e) states, in part: "State courts of competent jurisdiction and district courts of the United States shall have concurrent jurisdiction of actions under subsection (a)(1)(B) of this section." 29 U.S.C. § 1132(a)(1)(B) states: "A civil action may be brought by a participant or beneficiary to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." If the CEAF is either an employee welfare plan or a labor organization, the present dispute can be characterized as a civil action brought to clarify a beneficiary's rights under the terms of the plan and would fall within parameters of § 1132(a)(1)(B). Thus, the trial court has jurisdiction over the claim. *See also Edwards v. Bethlehem Steel Corp.* (1990), Ind.App., 554 N.E.2d 833, 837–38, *trans. denied.*

■ The trial court has general jurisdiction in all cases in law and in equity pursuant to IC § 33–4–4–3 (1992 Supp.). Subject matter jurisdiction is the power of a court to hear and determine the general class of cases to which the proceedings before it belong. *Harp v. Indiana Dept. of Highways* (1992), Ind.App., 585 N.E.2d 652, 656. "The only relevant inquiry in determining whether the court has subject matter jurisdiction is to ask whether th[e] kind of claim the plaintiff advances falls within the general scope of authority conferred upon such court by the constitution or statute." *Id.* Thus, the court's distribution of the remaining balance of the CEAF was within the general jurisdiction of the court under IC § 33–4–4–3.[12]

---

**10.** *See* IC § 22–6–1–1.

**11.** Anderson's purported second amended complaint states that the district court had jurisdiction pursuant to the federal RICO statute. He did not assert a cause of action under ERISA, and we do not intend by our discussion to suggest that ERISA would govern Anderson's claim or the disposition of the CEAF.

**12.** In its entry of November 6, 1991, the court concluded that:

> Defendants' application requests the court to exercise its authority to dispose of a charitable fund which, because of changed circumstances, can no longer be administered precisely in the manner and for the purposes originally intended, for benefit of a similar object consistent with the original purpose of

We affirm the judgment of the trial court.

BAKER and BUCHANAN, JJ., concur.

the donors as nearly as feasible, in accordance with the doctrine of cy pres recognized in Indiana. Record at 322; *see also* Amended Application of Defendants For Authority to Make Final Distribution of Remaining Balance of CEAF, Record at 267 (no longer any feasible method of administering and distributing the remaining balance of the CEAF solely for the benefit of unemployed former workers of Continental).

Neither party takes issue with the use of the doctrine of cy pres in determining the outcome of this case. Under this doctrine, when a charitable trust's purpose has become impossible, impracticable or illegal, a court may alter the objective of the trust by substituting another trust purpose close to the original purpose of the settlor. *Quinn v. Peoples Trust & Savings Co.* (1945), 223 Ind. 317, 328, 60 N.E.2d 281, 285; *Sendak v. Trustees of Purdue University* (1972), 151 Ind.App. 372, 377, 279 N.E.2d 840, 843.

According to Wolford, the fund became dormant because the method established for the administration of the CEAF hampered its intended use. A court can change, or permit the trustee to change, the methods of administration of a trust when it is necessary or highly desirable in order to enable the trustee to perform the trust. This is described as the doctrine of equitable deviation. *Sendak*, 151 Ind.App. at 377–78, 279 N.E.2d at 844.

Under the doctrine of equitable deviation, "the court will permit the trustees to deviate from the mechanical means of administration of the trust where circumstances not known or foreseen by the testator have come about, and where such change in circumstances in combination with the administrative means provided in the trust would defeat or substantially impair the accomplishment of the intended trust purpose." *Id.* at 378, 279 N.E.2d at 845; *see also Foust v. William E. English Foundation* (1948), 118 Ind.App. 484, 80 N.E.2d 303, *trans. denied.* It could be argued that, while the court offered Wolford appropriate equitable relief when it allowed final distribution of the CEAF to the Howard County United Way, the more suitable judicial tool to accomplish this transfer would have been the doctrine of equitable deviation, not cy pres.