T.C. Memo. 2013-168

UNITED STATES TAX COURT

TAURUS FX PARTNERS, LLC, RICHARD POSTMA, A PARTNER OTHER THAN THE TAX MATTERS PARTNER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 8017-12.                    Filed July 22, 2013.

Jenny L. Johnson and Guinevere M. Moore, for petitioner.

Gerald A. Thorpe, for respondent.

MEMORANDUM OPINION

BUCH, Judge:  This matter is before the Court on cross-motions to dismiss for lack of jurisdiction.  Petitioner, Mr. Postma, alleges that the notice of final partnership administrative adjustment (FPAA) upon which this case is predicated is invalid because it was not sent to the proper address.  Respondent maintains that

**[\*2]** the FPAA is valid. Respondent further asserts, and Mr. Postma cannot reasonably dispute, that if the FPAA is valid, then the petition was untimely. Thus, the sole issue for the Court to decide is whether the FPAA is valid. Because the FPAA was mailed in accordance with the notice provisions of section 6223 and the regulations thereunder, the Court will grant respondent's motion to dismiss the untimely petition filed in this case.[1]

Background

On October 10, 2000, FX Trading Co., LLC (FX Trading), and Bricolage Capital, LLC (Bricolage), formed Taurus FX Partners, LLC (Taurus), a limited liability company that was treated as a partnership for Federal income tax purposes. Bricolage was the managing member and tax matters partner (TMP) of Taurus, and FX Trading was a notice partner of Taurus. Mr. Postma was the sole member of FX Trading, thus rendering it a disregarded entity for Federal income tax purposes. On December 1, 2000, Mr. Postma assigned his interest in FX Trading to The Littlefield Group, Inc. (Littlefield), a subchapter S corporation of which he was the sole shareholder.

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[*3]  Taurus timely filed its 2000 Form 1065, U.S. Return of Partnership Income, which included the following addresses:

For the partnership:

> Taurus FX Partners, LLC
> c/o Bricolage Capital, LLC
> 570 Lexington Avenue 25th Floor
> New York, NY 10022

For the TMP:

> Bricolage Capital, LLC
> 570 Lexington Avenue 25th Floor
> New York, NY 10022

For FX Trading:

> FX Trading Company, LLC
> c/o Richard Postma
> 20 Monroe NW
> Grand Rappids [sic], MI 49503.

On July 28, 2003, the Commissioner issued notices of beginning of administrative proceeding (NBAPs) regarding Taurus' 2000 taxable year.[2]  The NBAPs were issued to FX Trading and separately to Richard Postma at the same Grand Rapids address (albeit without the typo).

---

[2]On that same date, the Commissioner issued NBAPs for Taurus' 2001 taxable year.  Mr. Postma alleges that he received only the NBAP that was addressed to him, personally, for 2001.  The record reflects that four NBAPs were issued on July 28, 2003, to the Grand Rapids address, two each for 2000 and 2001.

**[\*4]**  During the course of the examination the Internal Revenue Service (IRS) dealt directly with Mr. Postma on some occasions.  For example, in February 2004 the IRS sent Mr. Postma a Form 4564, Information Document Request, relating to his investment in Taurus.  In January 2005 Mr. Postma signed a Form 872-P, Consent to Extend the Time to Assess Tax Attributable to Partnership Items, for Taurus' 2000 taxable year.  Mr. Postma's representative included in a cover letter to the Form 872-P that "Mr. Postma has never been officially designated as a tax matters partner or managing member" and so he signed the Form 872-P on both the line for the TMP and on the line for the "Authorized Person".

On October 14, 2005, Bricolage filed a voluntary chapter 11 bankruptcy petition.[3]  The Commissioner filed a proof of claim in that proceeding.

On November 16, 2010, the Commissioner issued an FPAA for Taurus' 2000 taxable year.  Copies of the FPAA were sent to the following addresses by certified mail:

---

[3]Filing the petition in bankruptcy had the dual effect of converting Bricolage's partnership items to nonpartnership items, thus removing Bricolage from any TEFRA proceeding, and terminating Bricolage's status as TMP.  See Computer Programs Lambda, Ltd. v. Commissioner, 89 T.C. 198 (1987); see also sec. 301.6231(a)(7)-1(l)(1)(iv), Proced. & Admin Regs., and sec. 301.6231(c)-7T, Temporary Proced. & Admin. Regs., 52 Fed. Reg. 6793 (Mar. 5, 1987).  The temporary regulations were in effect for the year in issue but have since been replaced by final regulations.

[*5]    1.    Tax Matters Partner
             Taurus FX Partners, LLC
             570 Lexington Avenue, 25th Floor
             New York, NY 10022

        2.    Bricolage Capital, LLC
             Tax Matters Partner
             Taurus FX Partners, LLC
             5701 [sic] Lexington Avenue, 25th Floor
             New York, NY 10022

        3.    Bricolage Capital, LLC
             One Bryant Park, Suite 37C
             New York, NY 10036

        4.    FX Trading Company, LLC
             20 Monroe Northwest, Suite 450
             Grand Rapids, MI 49503

        5.    Caballo, Inc.
             570 Lexington Avenue, 25th Floor
             New York, NY 10022

        6.    Stillwater, Inc.
             250 Greenwich Street, 34th Floor
             New York, NY 10007

FPAA 1 was sent to the partnership at the partnership's address as shown on the

2000 partnership Form 1065.  FPAA 2 was misaddressed to Bricolage, the former

TMP.  FPAA 3 was sent to the former TMP at an address the IRS had updated

using a subsequently filed return.  FPAA 4 was sent to FX Trading, as notice

partner, at the address shown on the Schedule K-1, Partner's Share of Income,

[*6] Deductions, Credits, etc., that had been attached to the 2000 Form 1065. And FPAAs 5 and 6 were sent to entities that owned interests in Bricolage. All of these FPAAs were returned by the Postal Service except the one mailed to Bricolage at the One Bryant Park address.[4]

On March 28, 2012 (more than 150 days after FPAA 1 was mailed), Mr. Postma filed a petition in this Court as a partner other than the tax matters partner.[5] Shortly thereafter, Mr. Postma filed a motion to dismiss for lack of jurisdiction and a memorandum of law in support of his motion. Mr. Postma asserts that the FPAA is invalid for a variety of reasons: (1) an FPAA was not mailed to him at his last known address, (2) an FPAA was not mailed to the addresses listed on Taurus' 2001 partnership return, (3) he did not receive an NBAP for Taurus' 2000 taxable year, and (4) the FPAA was issued after the period of limitations had expired. Respondent filed his own motion to dismiss for lack of jurisdiction asserting that the Court lacks jurisdiction in this case because the petition disputing the adjustments in the FPAA was not timely filed. Of course, respondent's motion is

_____

[4]The FPAA sent to Bricolage at 5701 Lexington Avenue was likely returned because of a typographical error in the address. The One Bryant Park address was known to respondent through Bricolage's 2008 partnership return.

[5]A notice partner may file a petition during the 60-day period following the 90-day period during which a tax matters partner may file a petition. See sec. 6226(b)(1). Mr. Postma's petition was filed well after that period.

**[*7]** predicated on the notion that the FPAA was valid and thus began the running of the period within which to file a petition. Effectively, the only issue for the Court to resolve is whether the FPAA was valid.

## Discussion

The IRS must issue an FPAA if it decides to make adjustments to partnership items claimed on a partnership return.[6] The FPAA is the jurisdictional notice that permits a partner to file a petition challenging the IRS' adjustments.[7]

The TEFRA[8] statutory and regulatory scheme sets forth, in general terms, who is entitled to notice and how one goes about updating the list of who is entitled to notice.[9] The IRS must send an FPAA to the notice partners,[10] but it is the notice to the TMP that begins the running of the period within which to file a petition.[11] The notice to the TMP may be addressed to the TMP by name at

---

[6]See Kligfield Holdings v. Commissioner, 128 T.C. 192, 200 (2007).

[7]Sec. 6226(a) and (b).

[8]TEFRA refers to the unified partnership audit and litigation procedures of the Tax Equity and Fiscal Responsibility Act of 1982, Pub. L. No. 97-248, sec. 402(a), 96 Stat. at 648.

[9]See generally sec. 6223 and the regulations thereunder.

[10]Sec. 6223(a)(2).

[11]Sec. 6226(a) and (b); see also Triangle Investors Ltd. P'ship v.

(continued...)

**[\*8]** the TMP's address, or a "generic notice" addressed to "Tax Matters Partner" may be sent to the partnership address as shown on the return for the year at issue.[12]  The IRS then must send a copy of the FPAA to the notice partners who are identified on the partnership return for the year at issue.[13]

The last known address rules applicable to notices of deficiency[14] do not apply to FPAAs.[15]  Section 6223(c)(1) instructs that the partnership return is the starting point for identifying where to mail notices.  The IRS must update that information only to the extent the updated information is provided in accordance with the regulations.[16]  The regulations require that updates be made by submitting

---

[11](...continued)
Commissioner, 95 T.C. 610, 612-613 (1990).

[12]See Triangle Investors Ltd. P'ship v. Commissioner, 95 T.C. at 614; see also Chomp Assocs. v. Commissioner, 91 T.C. 1069, 1073 (1988).

[13]Sec. 6223(d)(2).

[14]See sec. 6212(b)(1).

[15]See Utah Bioresearch 1984, Ltd. v. Commissioner, T.C. Memo. 1989-612.

[16]Sec. 6223(c)(2); Triangle Investors Ltd. P'ship v. Commissioner, 95 T.C. at 613; sec. 301.6223(c)-1T, Temporary Proced. & Admin. Regs., 52 Fed. Reg. 6784 (Mar. 5, 1987).  The temporary regulations were in effect for the year in issue but have since been replaced by permanent regulations.  See sec. 301.6223(c)-1, Proced. & Admin. Regs.

**[*9]** a written statement, generally to the service center where the partnership

return was filed, and that the statement:

(i)     Identify the partnership, each partner for whom information is supplied, and the person supplying the information by name, address, and taxpayer identification number;

(ii)    Explain that the statement is furnished to correct or supplement earlier information with respect to the partners in the partnership;

(iii)   Specify the taxable year to which the information relates;

(iv)    Set out the corrected or additional information; and

(v)     Be signed by the person supplying the information.[17]

With these fundamental rules in mind, we turn to the question of where the

IRS was required to mail the FPAA in this case.

Notice to the Tax Matters Partner

As previously stated, it is sufficient for the IRS to mail a generic FPAA.[18]

By mailing an FPAA addressed to "Tax Matters Partner, Taurus FX Partners,

LLC" at the partnership address shown on the taxable year 2000 partnership

return, the IRS fulfilled its obligation to notify the TMP.

---

[17]Sec. 301.6223(c)-1T(b)(3), Temporary Proced. & Admin. Regs., 52 Fed. Reg. 6784 (Mar. 5, 1987).

[18]See Triangle Investors Ltd. P'ship v. Commissioner, 95 T.C. at 614; see also Chomp Assocs. v. Commissioner, 91 T.C. at 1073.

[*10] Mr. Postma alleges that Taurus filed a 2001 return showing a new address and that the IRS should have mailed the FPAA to that address. The 2001 partnership return did not satisfy the requirements of the regulations to update any address for the 2000 taxable year. The 2001 return did not explain that it was a statement furnished to correct or supplement information for 2000 and did not specify that the information related to 2000, nor did it relate to the 2000 year simply because box E included the date the business started of October 10, 2000.[19] Although the Commissioner may use other information in its possession, he is not obligated to search his records for information that is not expressly furnished on the 2000 return or pursuant to the regulations.[20] Thus, notice to the TMP at the partnership address as shown on the year 2000 Form 1065 was sufficient.

The notices that were mailed to Bricolage are irrelevant to the TMP notice issue because at the time the notices were issued, Bricolage was no longer the TMP. Bricolage filed a bankruptcy petition on October 14, 2005. A partner's status as tax matters partner is terminated when it becomes a debtor in a

---

[19]The Court takes judicial notice of the 2000 Instructions for Form 1065, which state: "If the partnership changes its mailing address after filing its return, it can notify the IRS by filing Form 8822, Change of Address." See Fed. R. Evid. 201.

[20]See Murphy v. Commissioner, 129 T.C. 82, 87 (2007); sec. 301.6223(c)-1T(f), Temporary Proced. & Admin. Regs., 52 Fed. Reg. 6784 (Mar. 5, 1987).

[*11] bankruptcy proceeding, and thus Bricolage was no longer the TMP when the FPAA was issued.[21] Note, however, that a copy of the FPAA was mailed to Bricolage at the One Bryant Park address that Bricolage used on its 2008 partnership return, and that envelope was not returned to respondent. Thus, it appears Bricolage received actual notice of the FPAA.[22]

Notice to a Notice Partner

The partnership return in the record identified only one notice partner other than Bricolage: FX Trading. The IRS mailed a copy of the FPAA to FX Trading at the address shown on the Schedule K-1 for FX Trading that was included with the year 2000 partnership return that Taurus filed.[23] As previously stated, the IRS may use the address as shown on the partnership return unless that address was

---

[21]See Computer Programs Lambda, Ltd. v. Commissioner, 89 T.C. 198 (1987); see also sec. 301.6231(c)-7T(a), Temporary Proced. & Admin. Regs., 52 Fed. Reg. 6793 (Mar. 5, 1987).

[22]See sec. 7502(c)(2) (document sent by certified mail is prima facie evidence of delivery).

[23]There is a discrepancy between the address for FX Trading shown on the partnership return and the address to which the FPAA was mailed; the FPAA identified a suite number for FX Trading that was not referenced in the partnership return. Neither party alleges that this difference was material, and the Court finds that it was immaterial. See Yusko v. Commissioner, 89 T.C. 806, 810 (1987); Clodfelter v. Commissioner, 57 T.C. 102, 107 (1971), aff'd, 527 F.2d 754 (9th Cir. 1975); Sebastian v. Commissioner, T.C. Memo. 2007-138.

**[\*12]** updated in accordance with the regulations under section 6223. It was not, and thus this notice was sufficient.

The partnership return did not identify Mr. Postma as a notice partner. He is identified on the Schedule K-1 as the contact person for FX Trading but not as a notice partner in his own right.

Moreover, at no time did anyone identify Mr. Postma as an indirect partner in the manner required by section 301.6223(c)-1T, Temporary Proced. & Admin. Regs., supra. Although he attempts to string together various documents to show that information was provided to the IRS showing that he was an indirect partner, this information was not provided in conformity with the regulations, and the IRS is required to use the information on the partnership return except as modified by additional information furnished under the regulations.[24]

It may be helpful to make clear the distinction between permissive and prescriptive terms. Section 6223(c)(1) provides that, for notice purposes, the IRS "shall use the names, addresses, and profits interest shown on the partnership return." Likewise, section 6223(c)(2) provides that the IRS "shall use additional information furnished to him * * * in accordance with regulations prescribed by the Secretary." Those regulations provide that the IRS "will use additional

---

[24]See Triangle Investors Ltd. P'ship v. Commissioner, 95 T.C at 613.

[*13] information",[25] but the regulation goes on to instruct that the statement

providing that additional information "shall" contain certain specified items[26] and

that the statement "shall generally be filed with the service center with which the

partnership return is filed."[27]  "Shall" is a prescriptive term.[28]  If a taxpayer

provides a statement identifying a partner or providing updated contact

information that includes all of the prescribed information and if the statement is

sent to the prescribed location, then the IRS must use the information provided in

that statement.

In contrast to the prescriptive terms just described, the regulation further

provides that the IRS "may use other information in its possession".[29]  "May" is

---

[25]Sec. 301.6223(c)-1T(a), Temporary Proced. & Admin. Regs., 52 Fed. Reg. 6784 (Mar. 5, 1987).

[26]Sec. 301.6223(c)-1T(b)(3), Temporary Proced. & Admin. Regs., supra.

[27]Sec. 301.6223(c)-1T(b)(2), Temporary Proced. & Admin. Regs., 52 Fed. Reg. 6784 (Mar. 5, 1987).

[28]See Tafflin v. Levitt, 493 U.S. 455, 460-461 (1990) ("shall" and "must" are compulsory terms) (citing Charles Dowd Box Co. v. Courtney, 368 U.S. 502, 506 (1962)).  "Shall" is defined as "must; is or are obliged to".  Webster's New Universal Unabridged Dictionary 1758 (2003).  "Must" is defined as "to be obliged or bound by an imperative requirement".  Id. at 1269.

[29]Sec. 301.6223(c)-1T(f), Temporary Proced. & Admin. Regs., supra.

**[\*14]** permissive; it does not create an obligation.[30]  If the plain language is not clear enough, the regulation goes on to provide that "the Service is not obligated to search its records for information not expressly furnished under this section."[31]

Mr. Postma insists that he was a notice partner and that the IRS received information identifying him as such.  Mr. Postma asserts that his responses to information document requests and respondent's communications directly with him notified respondent that he was a notice partner and that the IRS accepted him as such because it continued to communicate directly with him:  It sent him an NBAP for 2001, and it requested that he sign the Form 872-P extending the period of limitations on assessment for Taurus.  While the IRS was certainly able to use this information to provide notice to Mr. Postma, it was under no obligation to do so.  If Mr. Postma wanted to receive notice under section 6223, he needed to file a statement as prescribed by the regulations.

A few observations may help to explain why the TEFRA notice rules differ from those that apply to deficiency procedures.  First, unlike a corporate or an

---

[30]See Tafflin v. Levitt, 493 U.S. at 460-461 ("may" is permissive) (citing Charles Dowd Box Co. v. Courtney, 368 U.S. at 506).  "May" can be used to express possibility, opportunity, or permission.  Webster's New Universal Unabridged Dictionary 1189.

[31]Sec. 301.6223(c)-1T(f), Temporary Proced. & Admin. Regs., supra.

**[*15]** individual income tax proceeding where the examination is directly of the taxpayer's return, a TEFRA proceeding is conducted at the partnership level, and yet the partnership is not liable for the tax. The partners who are ultimately liable for the tax can change from year to year. Thus, adjustments resulting from a partnership proceeding relating to one taxable year may affect a completely different set of taxpayers from those who owned an interest in that same partnership in another year. As a result, simply updating address information from a subsequent year's return as is done in deficiency procedures puts the IRS in peril of notifying the wrong people. In TEFRA cases, it is the service centers that are generally responsible for issuing notices.[32] Because partnerships may involve multitiered structures and passthrough partners, the IRS must often trace through this structure to reach the ultimate taxpayers. Again, it is the service center personnel who handle this work.[33]

Indeed, Taurus provides a clear example of the complexity described above. Looking only at the face of the partnership return and the attached Schedules K-1

---

[32]The campus TEFRA function operates out of IRS service centers. See Internal Revenue Manual (IRM) pt. 4.31.1.2(1)(E) (June 5, 2013). It is this group that is responsible for attempting to link partnership returns to the ultimate taxpayers. See, e.g., id. pt. 4.31.3.3.3 (Feb. 29, 2008).

[33]See, e.g., IRM pt. 4.31.3.3.3 (Feb. 29, 2008).

[*16] in the record, only Taurus, Bricolage, and FX Trading are identified. Although Mr. Postma is shown on the FX Trading Schedule K-1, he is named only in an "in care of" capacity. The Schedule K-1 identifies FX Trading as a limited liability company, which could have only one member or members numbering in the thousands. From the face of the partnership return, the IRS has no way to identify that FX Trading is a single-member LLC and a disregarded entity. In fact, from the partnership return, the IRS would have no way to identify the fact that Mr. Postma, as of the close of the taxable year, did not own an interest in FX Trading; it was owned by Littlefield. Mr. Postma chose to create FX Trading to be a partner in Taurus rather than to personally be a partner in Taurus. Mr. Postma also assigned his interest in FX Trading to Littlefield before the 2000 partnership return was filed, thereby creating yet another layer between himself and Taurus. In the context of substantive tax matters, the Supreme Court "has observed repeatedly that, while a taxpayer is free to organize his affairs as he chooses, nevertheless, once having done so, he must accept the tax consequences of his choice, whether contemplated or not * * * and may not enjoy the benefit of some other route he might have chosen to follow but did not."[34] This proposition should

---

[34]Commissioner v. National Alfalfa Dehydrating & Milling Co., 417 U.S. 134, 149 (1974) (citing Higgins v. Smith, 308 U.S. 473, 477 (1940), Old Mission

(continued...)

**[*17]** be no less true in procedural matters. Mr. Postma chose his structure, and he must meet the procedural burdens that accompany his choice.

NBAP

Mr. Postma also challenges the validity of the FPAA because he contends that he did not receive an NBAP for the examination of the 2000 Taurus return. Section 6223(a) requires that the Commissioner mail an NBAP to each partner whose name and address are provided either on the return or as updated by the regulations. For the same reasons stated above, the IRS was not required to mail an NBAP to Mr. Postma. Moreover, even if the IRS had been required to mail an NBAP to Mr. Postma, or if the IRS failed to mail an NBAP to FX Trading, the remedy was to elect that the partnership items become nonpartnership items under section 6223(e)(3).[35] Mr. Postma has not alleged that he made such an election, and such an election would now be untimely.

---

[34](...continued)
Portland Cement Co. v. Helvering, 293 U.S. 289, 293 (1934), and Gregory v. Helvering, 293 U.S. 465, 469 (1935)).

[35]Sec. 6223(e)(3) allows taxpayers to whom the IRS untimely mails notice of a proceeding to opt to have their partnership items treated as nonpartnership items, so long as the proceeding is ongoing. At the time the FPAA was issued to FX Trading, the proceeding was ongoing.

**[*18]** <u>Period of Limitations</u>

With respect to Mr. Postma's assertion that the FPAA was invalid because it was issued after the period of limitations on assessment had expired, we note briefly that (1) the assertion of untimeliness of the FPAA is an affirmative defense[36] that must be raised in a timely filed petition in response to the FPAA or else it is waived,[37] (2) the Court must have jurisdiction in a case before it may evaluate an affirmative defense,[38] and (3) the issuance of an FPAA beyond the period of limitations does not affect its validity.[39]

Conclusion

The law on each of the issues Mr. Postma raises is well settled. The IRS must provide notice to the partners as identified in the partnership return. It did. If Mr. Postma wanted notice to go elsewhere, he was required to notify the IRS in accordance with the regulations under section 6223. He didn't. Accordingly, the

---

[36]See <u>Crowell v. Commissioner</u>, 102 T.C. 683, 693 (1994); <u>Columbia Bldg., Ltd. v. Commissioner</u>, 98 T.C. 607, 611 (1992).

[37]<u>Genesis Oil & Gas Ltd. v. Commissioner</u>, 93 T.C. 562, 564 (1989).

[38]<u>Wind Energy Tech. Assocs. III v. Commissioner</u>, 94 T.C. 787, 789 (1990).

[39]<u>Genesis Oil & Gas Ltd. v. Commissioner</u>, 93 T.C. at 564; <u>Wayne Caldwell Escrow P'ship v. Commissioner</u>, T.C. Memo. 1996-401.

**[*19]** FPAA is valid. The petition in this case was not filed within 150 days of the date on which the FPAA was mailed to the TMP, and thus the petition was untimely.

To reflect the foregoing,

<u>An appropriate order and order of dismissal for lack of jurisdiction will be entered</u>.